In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00018-CR
NO. 09-14-00019-CR

_____

**RUDY TRUJILLO DIMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 258th District Court**
**Polk County, Texas**
**Trial Cause No. 22483 (Count 1 and 2)**

**MEMORANDUM OPINION**

Rudy Trujillo Dimas appeals from a jury trial that resulted in his conviction

of a third-degree felony and a Class A misdemeanor for assaulting A.W.,[1] a

member of his family. *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2014).

Under the felony count, count one, the jury found that on or about May 8, 2012,

---

[1] To protect the privacy of the witnesses that testified to Dimas's assault, they are identified with their initials. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

1

Dimas assaulted A.W. by impeding her normal breathing. *See id.* § 22.01(b)(2)(B). Under the misdemeanor count, count two, the jury found that on or about the same date, Dimas assaulted A.W. by kicking, biting, or punching her, or by pulling her hair. *See id.* § 22.01(b). Dimas elected to have the trial court assess punishment. The trial court sentenced Dimas to ten years on the felony conviction and to one year in jail on the misdemeanor.

In three issues, Dimas asserts that the State failed to sufficiently prove that A.W. was a member of his family or his household, that the trial court abused its discretion by allowing a witness to testify about an extraneous offense without conducting the balancing test required by Rule 403 of the Texas Rules of Evidence, and that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prevents his being punished for both assaults. We hold that Dimas's issues are without merit, and we affirm the trial court's judgment.

Sufficiency of the Evidence: Family or Household Member

In reviewing a challenge to the sufficiency of the evidence, the evidence is assessed in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). Because it is the jury's

2

responsibility to resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, a jury verdict will be upheld "unless a reasonable juror must have had a reasonable doubt as to at least one of the elements of the offense." *Runningwolf v. State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012).

In this case, Dimas's convictions are based on different subsections of the assault statute, section 22.01 of the Penal Code. Tex. Penal Code Ann. § 22.01. According to the testimony introduced during Dimas's trial, Dimas had his first altercation with A.W. in her bedroom when she rebuffed his request for sex. Following the altercation that ensued in the house, Dimas went into the living room after A.W. told him that she was going to go to the bathroom. When A.W. heard Dimas fall, she fled the house. As she was running away, she called the police. However, Dimas caught her, and in the ensuing altercation, Dimas and A.W. fought, rolled on the ground, and he choked her.

A person commits the offense of assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse[.]" *Id*. § 22.01(a)(1). An assault under section 22.01(a)(1) of the Texas Penal Code is elevated to a third degree felony if the victim is "a person whose relationship to or association with the defendant is described by Section

3

71.0021(b), 71.003, or 71.005, Family Code," and "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth[.]" *Id.* § 22.01(b)(2)(B).

The Family Code sections referenced in section 22.01(b)(2) of the Penal Code describe relationships that include a "family" relationship or a relationship that exists based on the victim's status as a member of the defendant's "household." *See* Tex. Fam. Code Ann. §§ 71.0021(b), 71.003, 71.005 (West 2014). Dimas contends the evidence in his case fails to show that A.W. was a member of his "family" or a member of his "household." Under the Family Code, the term "'[f]amily' includes individuals related by consanguinity or affinity, as determined under Sections 573.022 and 573.024, Government Code, individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and a foster child and foster parent, without regard to whether those individuals reside together." *Id.* § 71.003; *see also* Tex. Gov't Code Ann. §§ 573.022, 573.024 (West 2012). The method for determining consanguinity, which applies to relationships that are within the third degree, provides that two individuals are related to each other if one is a descendant of the

4

other or they share a common ancestor. *Id.* §§ 573.002 (West 2012), 573.022. The State does not argue that Dimas was related to A.W. by affinity.

While there is scant evidence showing that Dimas is related to A.W. by consanguinity, there is a significant amount of evidence relevant to the jury's determination that A.W. was a member of Dimas's household. With respect to the term "household," the Family Code defines the term to mean "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." Tex. Fam. Code Ann. § 71.005. Notably, the Family Code provision defining "household" does not include a provision that describes the length of time the people must live together before the relationship can qualify as a "household." *Id*. § 71.005.

We agree with Dimas's argument that the evidence before the jury was not sufficient to demonstrate that A.W. and Dimas shared a common ancestor. Although A.W. referred to Dimas at one point in the trial as her uncle, she also stated that she could not recall whether she and Dimas shared a common ancestor. There was no other testimony introduced to establish that A.W. is related to Dimas by consanguinity.

Next, we turn to Dimas's argument that A.W. was not a member of his household. According to Dimas, the circumstances regarding why A.W. was

5

present in his house on the date of the assaults demonstrate that A.W. was there temporarily as a visitor. Dimas concludes the evidence is insufficient to show that A.W. was a member of his household.

The evidence before the jury that explains why A.W. was living with Dimas allowed the jury to infer that she was a member of his household when the assaults occurred. For instance, A.W. testified that in May 2012, her mother and Dimas took her from Houston to Livingston to live with Dimas. A.W. described Dimas as a member of her family, and she explained that before moving to Livingston, she had previously lived with Dimas sporadically in Houston. Additionally, shortly before A.W. moved to Livingston, she was homeless and had been living under a bridge. According to A.W., approximately four days before the assaults occurred, Dimas agreed to take her into his home. A.W. testified that she considered herself to be a member of Dimas's household. The evidence also shows that when A.W. moved to Livingston, she moved into Dimas's home along with all of her possessions.

With respect to the requirements to establish that a person is a member of another's household, the "Legislature has established a low legal threshold for establishing the facts necessary to turn a simple assault into an assault-family violence." *See Gomez v. State*, 183 S.W.3d 86, 90 (Tex. App.—Tyler 2005, no

6

pet.). There was no evidence showing that A.W. had plans to return to a more permanent residence after she moved into Dimas's home. When viewed in the light most favorable to the jury's verdict, the evidence before the jury describing A.W.'s living arrangement allowed the jury to reasonably infer that she was a member of Dimas's "household" when the assaults occurred. As a member of his "household," she was also a member of his "family" under section 22.01(a)(1) of the Penal Code. Tex. Penal Code Ann. § 22.01(a)(1). We overrule issue one.

Rule of Evidence 403: Conducting a Balancing Test

In issue two, Dimas contends that the trial court abused its discretion by allowing the State to introduce testimony of a prior assault that Dimas allegedly committed against P.K. According to P.K., who testified during the guilt-innocence phase of Dimas's trial, Dimas assaulted her in 2011 after she refused his request to have sex. P.K. explained during the trial that Dimas pushed her back into the house after she attempted to leave, and he choked her during an altercation that occurred after she was forced back into Dimas's home. Before P.K. testified, Dimas objected to her testifying, arguing that her testimony about the 2011 incident would be more prejudicial than probative. *See* Tex. R. Evid. 403. The record reflects that the State represented that P.K.'s testimony would be relevant to establishing Dimas's identity, his intent, and to rebut the impression that A.W.'s testimony that

7

she had been assaulted by Dimas was fabricated. The trial court overruled Dimas's objection. *See* Tex. R. Evid. 403. On appeal, Dimas complains that the trial court erred by failing to conduct a test to balance the probative value of P.K.'s testimony against its prejudicial impact before allowing her to testify before the jury.

When a party objects that testimony should be excluded because it would be more prejudicial than probative, the trial court is required to engage in a balancing process. *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh'g). Factors considered in a Rule 403 balancing test include:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;
(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";
(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;
(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

In Dimas's case, the record does not specifically show that the trial court refused to engage in the required balancing test before deciding to admit P.K.'s testimony. However, the record's silence about whether the balancing test was

8

performed does not imply that the trial court failed to balance the prejudicial value of the proposed testimony against its potentially prejudicial effect before the court admitted the testimony. *See Williams v. State*, 958 S.W.2d 186, 195-96 (Tex. Crim. App. 1997) (noting that "a judge is presumed to engage in the required balancing test once Rule 403 is invoked and we refuse to hold that the silence of the record implies otherwise"); *Santellan*, 939 S.W.2d at 173.

While Dimas argues the trial court's decision to admit the evidence harmed him, Dimas has not argued that the trial court abused its discretion by accepting the testimony for the purposes the State represented to the trial court that it was being offered. Moreover, Dimas has not advanced a clear and concise argument in his brief to explain why the prejudicial value of P.K.'s testimony about that assault, in light of the reasons the State explained it wanted the evidence admitted, outweighed the probative value of the testimony. *See* Tex. R. App. P. 38.1(i).

We have no duty to evaluate an alleged error in admitting evidence, an issue that does not involve a substantial right, where the defendant has not advanced an argument to explain the testimony was inadmissible for the purposes it was offered. *See Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995), *overruled on other grounds by Warner v. State*, 245 S.W.3d 458, 463 (Tex. Crim. App. 2008); Tex. R. App. P. 44.2(b) (requiring other errors, defects, irregularities,

or variances that do not affect a defendant's substantial rights to be disregarded). An appellate court does not serve as counsel for the defendant, and we are not required to make a party's arguments on an issue that the party chose not to advance on appeal. *See Russo v. State*, 228 S.W.3d 779, 792 (Tex. App.—Austin 2007, pet. ref'd).

We hold that the trial court's failure to expressly state that it had weighed the probative value of P.K.'s testimony about the 2011 assault against the prejudicial nature of the testimony before deciding to admit the testimony is no indication that the trial court failed to perform the balancing test required by Rule 403. We overrule issue two.

## Double Jeopardy: Same Offense

In issue three, Dimas argues that punishing him for two assaults that occurred on the same date resulted in a violation of his rights under the Double Jeopardy Clause. *See* U.S. CONST. amend. V. According to Dimas, the proof required to establish that he was guilty of committing the misdemeanor assault included the same or less than all of the facts used by the State to establish that he was guilty on the charge that he assaulted A.W. by choking her, a felony.

Using the cognate pleadings approach and based on the facts alleged in Dimas's indictment, we will assume, without deciding, that the misdemeanor

assault, as alleged in the indictment, is a lesser-included offense of the felony assault. *Compare* Tex. Penal Code Ann. 22.01(a)(1), 22.01(b) (misdemeanor assault) *with* Tex. Penal Code Ann. § 22.01(b)(2)(B) (impeding normal breathing, a felony). "Where two crimes are such that the one cannot be committed without necessarily committing the other, then they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both." *Aekins v. State*, 447 S.W.3d 270, 280 (Tex. Crim. App. 2014); *see also Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (the Legislature has not authorized "stop-action" prosecutions for a single complete act of sexual assault). "If the offense is a single *continuous* act, with a single impulse, in which several different statutory provisions are necessarily violated along that continuum, the offenses merge together." *Aekins*, 447 S.W.3d at 275.

The question of whether a double jeopardy violation occurred in this case requires that we determine whether Dimas's two convictions were the result of the same criminal act. *See Blockburger v. United States*, 284 U.S. 299, 301-02 (1932); *Maldonado v. State*, 461 S.W.3d 144, 150 (Tex. Crim. App. 2015); *Aekins*, 447 S.W.3d at 274. Dimas cites *Saldana v. State,* 287 S.W.3d 43, 56, 58 (Tex. App.—Corpus Christi 2008, pet. ref'd) to support his argument that the assaults were the result of the same criminal act. In *Saldana*, the defendant, on the same night,

touched the victim's genitals five times and penetrated her sexual organ. *Id.* However, in *Saldana* there was no evidence to show that the five contacts occurred at different times due to separate impulses, and the evidence indicated that the offenses occurred as a single incident motivated by the same impulse. *Id.* In *Saldana*, the Corpus Christi Court of Appeals held that the defendant could not be sentenced more than once despite the jury's findings because his contacts with the victim all amounted to the same offense. *Id.*

In Dimas's case, however, there was evidence that a misdemeanor assault occurred inside Dimas's home, that another misdemeanor assault occurred outside Dimas's home when Dimas tried to prevent A.W. from leaving the premises, and that a felony assault occurred as Dimas and A.W. fought with each other and he choked her. The assaults that occurred outside resulted from Dimas's desire to prevent A.W. from leaving his home. Additionally, although relatively short, there was a break between the assault that occurred in A.W.'s bedroom and the assaults that occurred after A.W. left Dimas's home.

To determine if the offenses inside and outside Dimas's home are the same for double jeopardy purposes, we have considered the "'allowable unit of prosecution'" for the offense of assault. *See Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006) (quoting *Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex.

Crim. App. 1999)). Determining the allowable unit of prosecution "is a necessary step when a multiple-punishments claim deals with two offenses from the same statutory section[.]" *Garfias v. State*, 424 S.W.3d 54, 59 (Tex. Crim. App. 2014). With respect to assaults, the unit of prosecution is each victim. *Id.* at 60. In this case, A.W. was the sole victim of the assaults. Nevertheless, the fact that criminal acts involve only one victim is not the end of a court's double jeopardy inquiry. *See Aekins*, 447 S.W.3d at 277.

The inquiry also requires that the court determine whether the Legislature did not intend to allow multiple punishments for the same offenses. *Id*. (noting that "two offenses that are the 'same' *may* both be punished; sometimes two 'different' offenses *may not* both be punished") (footnotes omitted). In sexual assault cases, for example, the Court of Criminal Appeals concluded that the Legislature intended to punish each discrete assault. *Id*. at 277-78. According to the Court of Criminal Appeals, "[t]he key is that one act ends before another act begins." *Id*. at 278.

In this case, the evidence shows that the assault inside the house came to an end before the assaults that occurred outside the house began. A.W.'s written out-of-court statement to an investigating officer was admitted into evidence without objection. In her written statement, A.W. states that Dimas went into her room and

told her she "was going to give it up [whether she] liked it or not, and [he] started pulling my hair and pushing me."[2] During the trial, A.W. explained that Dimas came into her room and demanded sex. After she refused his advance, she tried to leave, but Dimas caught her shortly after she left his house.

Additional assaults occurred after A.W. fled Dimas's home, including the felony assault which is based on Dimas's choking A.W. during the altercation that occurred after she fled his home. The testimony reflects that when A.W. ran out of the door of Dimas's house, Dimas began to chase her, and she called 911. When Dimas caught A.W., Dimas punched her in the head, kicked her, bit her, and choked her until he saw the police were approaching. The evidence shows that the assault in the bedroom had ceased before the assault outside the house began, and the two assaults were not the result of the same impulse. We hold that no double jeopardy violation occurred. We overrule issue three, and we affirm the trial court's judgment.

---

[2] In his appeal, Dimas has not argued that the evidence was insufficient to show that he intentionally, knowingly, or recklessly caused A.W. to suffer a bodily injury that occurred inside Dimas's home. We note that the jury charge required the jury to find that Dimas caused A.W.'s bodily injury with respect to both the misdemeanor and the felony assaults. And, based on all of the direct and circumstantial evidence about the altercation that occurred inside the home, the jury could reasonably deduce that the injury A.W. suffered when her hair was pulled was painful. *See Ramirez v. State*, 518 S.W.2d 546, 547 (Tex. Crim. App. 1975); *Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd).

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on July 8, 2015
Opinion Delivered October 28, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

15