

# NUMBER 13-22-00020-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**BRIAN ERIK GUNTER,**                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                  **Appellee.**

## On appeal from the 24th District Court
## of Jackson County, Texas.

# OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Opinion by Justice Benavides**

Appellant Brian Erik Gunter, who was driving while intoxicated and speeding, caused an accident that resulted in the death of twelve-year-old LeMarquis Scott Lee. Based on this single incident and the fatal injuries suffered by Lee, the trial court convicted Gunter of five separate offenses: intoxication manslaughter (Count 1), aggravated assault

with a deadly weapon (Count 2), aggravated assault causing serious bodily injury (Count 3), recklessly causing serious bodily injury to a child (Count 4), and endangering a child (Count 6). [1] *See* Tex. Penal Code Ann. §§ 22.02(a)(1), 22.02(a)(2), 22.04(a)(1), 22.041(c), 49.08.

By a single issue with multiple subparts, Gunter complains that his convictions for aggravated assault and endangering a child violated his double-jeopardy protection against multiple punishments for the same offense, and therefore, only his convictions for intoxication manslaughter and serious bodily injury to a child should remain. According to the State, the evidence demonstrates that Lee suffered "numerous serious and fatal injuries," and we should consider these as distinct injuries sufficient to support Gunter's separate convictions. We affirm Gunter's convictions for intoxication manslaughter, injury to a child, and endangering a child, and we vacate his convictions for aggravated assault.

## I.    BACKGROUND

Gunter waived his right to a jury, and the case was tried to the bench. Although causation was hotly contested at trial, for purposes of this appeal, it is undisputed that Gunter's operation of a motor vehicle while intoxicated and in excess of the posted speed limit caused the accident that resulted in Lee's death. [2]

---

[1] The crimes alleged in Counts 1–4 are second-degree felonies, and endangering a child is a state jail felony. *See* Tex. Penal Code Ann. §§ 22.02(b), 22.04(e), 22.041(f), 49.08(b).Gunter was also indicted on a charge of criminal negligence causing serious bodily injury to a child, a state jail felony (Count 5). This count was abandoned by the State at the close of evidence.

[2] Lee was sitting in the rear passenger seat of a vehicle driven by his grandmother. She made an unprotected left turn from a two-lane street with a posted speed limit of 50 miles per hour. According to the State's accident reconstruction expert, seconds before the accident, Gunter was traveling in the opposite lane of traffic at a speed of over 90 miles per hour. Gunter failed a field sobriety test and refused to submit a breath specimen for analysis. A blood sample taken approximately one hour after the accident revealed that Gunter's blood alcohol concentration level was 0.129. The State argued at trial that the accident would

2

Dr. Lucas Wieck, the medical examiner that conducted Lee's autopsy, testified that Lee died from "blunt force trauma." Lee was ejected from the vehicle and died before paramedics arrived. Dr. Wieck noted that "[t]he effects of the blunt force trauma in this case were extensive," including "traumatic evacuation of both eyes," "gaping laceration of the face," "skull fractures," "lacerations of the dura matter," "traumatic evacuation of the brain and pituitary [gland]," "diaphragmatic hernia," bruised lungs, "laceration of the liver," and "a near transection . . . of the aorta."[3] Dr. Wieck agreed that several of these injuries alone were sufficient to cause Lee's death.

During closing arguments, that State asked the trial court "for a conviction on any one of Counts 1 through 4 [and] a conviction on Count 6 as well." Instead, the trial court found Gunter guilty on all five counts. The trial court also found two enhancement paragraphs true, which raised the applicable punishment range of Counts 1–4 from second-degree felonies to first-degree felonies and Count 6 from a state-jail felony to a third-degree felony. *See id.* §§ 12.42(b), 12.35(c). As to Counts 1–4, the trial court assessed Gunter's punishment at sixty years' confinement on each count. On Count 6, the trial court assessed Gunter's punishment at ten years' confinement. The trial court ordered all sentences to run concurrently.

Within thirty days of his conviction, Gunter filed a combined motion for new trial, challenging the legal sufficiency of the evidence, and motion to vacate, based on multiple double jeopardy violations. The motions were overruled by operation of law, and this

_____

not have occurred if Gunter had not been intoxicated and speeding.

[3] Lee's grandmother walked away from the accident, apparently uninjured.

3

appeal ensued.

## II.   APPLICABLE LAW & STANDARD OF REVIEW

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects defendants from multiple punishments for the same offense. *Sledge v. State*, Nos. PD-0065-22, 066-22, & 067-22, 2023 WL 2395833, at *5 (Tex. Crim App. Mar. 8, 2023); *see* U.S. CONST. amend. V (providing that no person may be "subject for the same offence to be twice put in jeopardy of life or limb"). This protection, however, is subject to the Legislature's "power to establish and define crimes." *Shelby v. State*, 448 S.W.3d 431, 435 (Tex. Crim App. 2014) (quoting *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014)). In other words, the Legislature has the authority to allow multiple punishments for the same conduct under different theories of criminal liability. *Id.* Accordingly, a double jeopardy analysis is an exercise in statutory construction, a question of law that we review de novo. *See id.*; *State v. Maldonado*, 523 S.W.3d 769, 774 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.).

There are two methods for ascertaining legislative intent depending on whether the offenses fall under different statutory sections or a single statute. *Shelby*, 448 S.W.3d at 435–36. This case involves both methods. Under the first method, used when the offenses fall under different statutory sections, courts examine the "elements" of each offense, beginning with the *Blockburger* test. *Id.* at 436; *see Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("Cumulative punishment may be imposed where separate offenses occur in the same transaction, as long as each conviction requires proof of an additional element that the other does not."). "In Texas, we follow the cognate-pleadings

4

approach to employing the *Blockburger* test." *Shelby*, 448 S.W.3d at 436. Courts examine the statutory elements in the abstract and compare the offenses as pleaded to determine whether the pleadings have alleged the same necessary facts. *Id.*

But that is not the end of our inquiry. *Id.* If the two offenses are not the same under the *Blockburger* test because each offense "requires proof of a fact that the other does not," we then turn to a list of non-exclusive factors to determine the ultimate question— "whether the Legislature intended to allow the same conduct to be punished under both of the statutes in question." *Id.* (discussing the factors set forth in *Ex parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999)).

These factors include: whether the offenses are organized in the same chapter of the penal code; whether the offenses are phrased in the alternative; whether the offenses are named similarly; whether the offenses have common punishment ranges; whether the offenses have a common focus; whether the common focus tends to indicate a single instance of conduct; whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*; and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes. *Bigon v. State*, 252 S.W.3d 360, 371 (Tex. Crim. App. 2008). Of these factors, determining whether the offenses share a common focus or gravamen is "regarded as the best indicator of legislative intent." *Shelby*, 448 S.W.3d at 436.

Under the second method, used when the defendant is convicted twice under the same statute, we employ a "units of prosecution" analysis. *Nawaz v. State*, 663 S.W.3d

5

739, 744 (Tex. Crim. App. 2022). This method varies depending on whether the defendant was convicted multiple times under the identical statutory subsection, or as in the instant case with Counts 2 and 3, the defendant was convicted more than once under different subsections of the same penal statute. *Id.* Under this second type of "units" analysis, courts may consider whether each theory of committing the offense "would cause a different type of harm to a victim." *Id.* at 745 (quoting *Haight v. State*, 137 S.W.3d 48, 50 (Tex. Crim. App. 2004)). As with an "elements" analysis, we ultimately look to the focus or gravamen of the statute as the best indicator of legislative intent. *Id.* at *5.

### III. ANALYSIS

#### A. Waiver

As a threshold issue, the State contends that Gunter waived his double-jeopardy complaint by failing to object at the time his sentence was imposed. The State acknowledges that a double jeopardy claim "may be raised for the first time on appeal when (1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest." *Garfias v. State*, 424 S.W.3d 54, 57–58 (Tex. Crim. App. 2014). Focusing on the second factor, the State argues that, even if undisputed facts show that a double jeopardy violation occurred, Gunter might have intentionally withheld his objection for strategic reasons. According to the State, "it was at least plausible that Gunter did not want to object to the multiple, but cumulative, 60-years sentences, and thereby open up the possibility of the trial court reconsidering and assessing the State's requested life sentence on a single count." But as the State implicitly concedes, its

6

argument is based purely on speculation. There is nothing in the record that would allow us to infer that Gunter consciously waived his double jeopardy complaint to gain some advantage.

Moreover, the State fails to acknowledge that Gunter filed a timely post-trial motion to vacate some of his convictions, raising the same double jeopardy grounds that he now presents on appeal. A motion preserves an error for appeal when it is made "at a time when the trial court is in a proper position to do something about it." *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). The appropriate remedy for a double jeopardy violation is to vacate one of the convictions, and the trial court may do so while it still has plenary power to act. *See Shelby v. State*, 448 S.W.3d 431, 440 (Tex. Crim App. 2014); *see also Carpenter v. State*, No. 11-15-00323-CR, 2018 WL 3763773, at *4 (Tex. App.—Eastland Aug. 9, 2018, no pet.) (mem. op., not designated for publication) (dismissing appellant's double jeopardy complaint as moot because the trial court had already granted appellant's motion to vacate his conviction on double jeopardy grounds). Thus, rather than finding that Gunter waived the error, we conclude that he preserved it for review.[4] *See Shelby*, 448 S.W.3d at 440; *see also Carpenter*, 2018 WL 3763773, at *4.

## B.      One Incident, One Victim, but Two Aggravated Assault Convictions

We begin our analysis with the most straightforward comparison for purposes of double jeopardy—Gunter's dual convictions for aggravated assault; one count based on

---

[4] Even if Gunter had not filed his motion to vacate, we would conclude that there are double jeopardy violations apparent from the face of the record and that enforcing the usual rules of procedural default would serve no legitimate interest. *See Garfias v. State*, 424 S.W.3d 54, 57–58 (Tex. Crim. App. 2014).

7

causing serious bodily injury, and one count based on causing bodily injury while exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(1), (2). The Texas Court of Criminal Appeals has already concluded that, for purposes of a defendant's right to a unanimous jury verdict, subsections 22.02(a)(1) and (a)(2) are the same offense. *Landrian v. State*, 268 S.W.3d 532, 539 (Tex. Crim. App. 2008). The Court explained that § 22.02(a) is a result-oriented statute, and the gravamen of the statute is "causing bodily injury." *Id.* at 533. When there is a single incident and a single victim, as is the case here, the statute does "not set out separate and distinct offenses" for causing serious bodily injury or using a deadly weapon. *Id.* at 539. "Rather, the aggravating factors or elements are simply descriptions of separate means by which a single offense of assault may be committed." *Id.*

Because the meaning of the statute is the controlling question in each type of analysis, courts look to prior precedent on the right to jury unanimity when examining the same statute for purposes of double jeopardy. *Jones v. State*, 323 S.W.3d 885, 889 (Tex. Crim. App. 2010); *see, e.g.*, *Nawaz*, 663 S.W.3d at 746 (examining penal code subsections 22.04(a)(1) and (a)(2) and concluding that prior precedent deciding that the two subsections were distinct offenses for purposes of jury unanimity also controlled the double jeopardy analysis). Accordingly, like *Landrian*, we conclude that in this context, where a single act caused bodily injury to a single victim, subsections 22.02(a)(1) and (a)(2) constitute the same offense for purposes of double jeopardy. *See* 268 S.W.3d at 533.

Nevertheless, the State argues that because Gunter caused multiple life-

8

threatening injuries to Lee, "there is no reason he should not be liable for having committed multiple assaultive offenses." We note that the State's position on appeal is inconsistent with its position in the trial court, where it asked for a single conviction "on any one of Counts 1 through 4." By asking this Court to now sanction Gunter's multiple convictions for aggravated assault, the State effectively seeks to dramatically expand the allowable unit of prosecution for aggravated assault in Texas.

It is well-established that "[t]he allowable unit of prosecution for an assaultive offense in Texas is each victim." *Shelby*, 448 S.W.3d at 439; *Garfias*, 424 S.W.3d at 60; *Bigon*, 252 S.W.3d at 372. When the Legislature enacted § 22.02(a), it "intended the offense of assault to be complete with the injury of a single individual." *Phillips v. State*, 787 S.W.2d 391, 395 (Tex. Crim. App. 1990). Thus, for example, a drunk-driving accident that causes serious bodily injury to multiple victims can support separate convictions for aggravated assault—one for each victim. *Id.* at 393–95. But we fail to see how Gunter could simultaneously complete multiple assaults against a single individual during the same criminal transaction. If we followed the State's argument to its logical conclusion, then the evidence supported at least ten separate convictions for aggravated assault—one count for every injury suffered by Lee.

Moreover, if we applied the State's theory to every aggravated assault, then a knife wielding assailant could be convicted of aggravated assault for each stab wound he inflicted on his victim in a single, uninterrupted attack. Such an approach is inconsistent with how the State has traditionally prosecuted stabbing cases in Texas. *See Tucker v. State*, 274 S.W.3d 688, 688–89 (Tex. Crim. App. 2008) (affirming single conviction for

9

aggravated assault with a deadly weapon where "[a]ppellant used a knife or some other sharp object to stab and cut the victim numerous times"); *Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd) (affirming single conviction for aggravated assault with a deadly weapon where appellant stabbed victim "with a pocketknife four times"); *Borrego v. State*, 800 S.W.2d 373, 375, 377 (Tex. App.—Corpus Christi–Edinburg 1990, pet. ref'd) (affirming single conviction for aggravated assault with a deadly weapon where the victim "had stab wounds on her chest and face").

To be sure, there are other types of assaultive offenses where the Legislature has defined separate and discrete injuries, each of which constitutes a separate offense even though both occurred during a single course of conduct and involved the same victim. *See Nawaz*, 663 S.W.3d at 746 (affirming dual convictions under penal code subsections 22.04(a)(1) and (a)(2) because appellant's conduct caused the victim to suffer both "serious bodily injury" and a "serious mental deficiency"); *cf. Loving v. State*, 401 S.W.3d 642, 649 (Tex. Crim. App. 2013) (affirming dual convictions under penal code subsections 21.11(a)(1) and (a)(2) in part because "indecency with a child by exposure and by contact protect children from different potential harms").

"Aggravated assault, however, does not have a statutorily specified injury." *Ortiz v. State*, 623 S.W.3d 804, 809 (Tex. Crim. App. 2021) (citing TEX. PENAL CODE ANN. § 22.02). Instead, the Texas Court of Criminal Appeals has already determined that § 22.02(a) broadly focuses on "causing bodily injury" and that subsections (a)(1) and (a)(2) are merely alternative means of committing the same offense against a single victim. *Landrian*, 268 S.W.3d at 533, 539. The State cannot point to a single case

10

interpreting § 22.02(a) in a contrary manner. Therefore, we decline the State's invitation to expand the allowable unit of prosecution for aggravated assault and hold that Gunter's convictions under subsections 22.02(a)(1) and (a)(2) constituted multiple punishments for the same offense.

### C. Gunter's Convictions for Intoxication Manslaughter & Aggravated Assault Constituted Multiple Convictions for the Same Offense

Gunter also contends that the Legislature did not intend for a person to be convicted of both intoxication manslaughter and aggravated assault for causing fatal injuries to the same victim. *See* TEX. PENAL CODE ANN. §§ 22.02(a)(1), 49.08.

Gunter concedes, and we agree, that each offense "requires proof of a fact that the other does not," and thus, they are not the same under the *Blockburger* test. *See Shelby*, 448 S.W.3d at 436. Looking at the elements of the two statutes in the abstract, intoxication manslaughter, a strict liability offense, requires proof that the defendant (1) was operating a motor vehicle in a public space, (2) was intoxicated, and (3) by reason of that intoxication, caused the death of another by accident or mistake. See TEX. PENAL CODE ANN. §§ 49.08, 49.11. By comparison, aggravated assault under § 22.02(a)(1) requires proof that the defendant intentionally, knowingly, or recklessly caused serious bodily injury to another. *See id.* §§ 22.01(a)(1), 22.02(a)(1). Thus, having determined that the two offenses are not the same under the *Blockburger* test, we now turn to the *Ervin* factors to determine "whether the Legislature intended to allow the same conduct to be punished under both of the statutes in question." *Shelby*, 448 S.W.3d at 436; *see Ex parte Ervin*, 991 S.W.2d at 814.

As to the first factor, intoxication manslaughter and aggravated assault appear in

11

separate penal code chapters, "but this does not necessarily mean that the Legislature intended the same conduct against the same victim to be punished under both statutes." *See Shelby*, 448 S.W.3d at 437. Because the two statutes appear in separate sections of the penal code, they cannot be phrased in the alternative, and consequently, the second *Ervin* factor does not apply. *See id.* at 438. Even though the names of the two statutes share no words, like aggravated assault, manslaughter denotes an elevated level of assaultive conduct, so the names of the offenses are somewhat similar under the third factor. *See id.* As to the fourth factor, both statutes are second-degree felonies, which weighs in favor of treating the two offenses as the same for double jeopardy purposes. *See* TEX. PENAL CODE ANN. §§ 22.02(b), 49.08(b); *Shelby*, 448 S.W.3d at 438.

Of the *Ervin* factors, a common focus between the two statutes is the most reliable indicator of legislative intent and can be outcome determinative. *See Shelby*, 448 S.W.3d at 438; *Nawaz*, 663 S.W.3d at 748 (collecting cases where the Texas Court of Criminal Appeals "found its focus/gravamen analysis to be determinative, notwithstanding consideration of the other *Ervin* factors"). Both offenses here are result oriented. The focus of intoxication manslaughter is "the death of an individual," *Bigon*, 252 S.W.3d at 371, not the defendant's intoxication. *Shelby*, 448 S.W.3d at 439. As previously mentioned, the focus of aggravated assault under § 22.02(a) is "causing bodily injury." *Landrian*, 268 S.W.3d at 533. Importantly, § 22.02(a)(1) contemplates not only bodily injury but also "bodily injury . . . that causes death." TEX. PENAL CODE ANN. § 1.07(a)(46) (defining "serious bodily injury"). Therefore, although intoxication manslaughter and aggravated assault are not the same offense in all situations, under the circumstances of

12

this case, both offenses resulted in Lee's death, and "the sameness of the result is an indication that the Legislature did not intend to impose multiple punishments." *Bigon*, 252 S.W.3d at 371.

In considering the common-focus factor, courts may also look to the allowable unit of prosecution. *Id.* This analysis can be instructive even though the two offenses are found in different statutory sections, as is the case here. *Id.* at 372. Again, "[t]he allowable unit of prosecution for an assaultive offense in Texas is each victim." *Shelby*, 448 S.W.3d at 439; *Garfias*, 424 S.W.3d at 60; *Bigon*, 252 S.W.3d at 372. This is especially true when the assaultive conduct results in homicide. *Johnson v. State*, 364 S.W.3d 292, 296 (Tex. Crim. App. 2012) ("With only one victim, there can be only one murder, regardless of how that murder is committed."). Applying that principle to the facts of this case, we observe that Gunter was punished twice for the same conduct that caused Lee's death. *See Nawaz*, 663 S.W.3d at 745 (explaining that when conducting a "units of prosecution" analysis, courts may consider whether the two offenses protect the victim from the same type of harm). Given the shared focus of the two offenses and the allowable unit of prosecution for assaultive offenses, we conclude that the Legislature did not intend for Gunter to be punished under both statutes for the same conduct. *See Shelby*, 448 S.W.3d at 436.

There are several cases that support our conclusion. In an unpublished opinion, we held that "intoxication assault and aggravated assault in a case involving the same accident and victim are the same offense for double jeopardy purposes." *Sylva v. State*, No. 13-01-139-CR, 2004 WL 42370, at *1 (Tex. App.—Corpus Christi–Edinburg Jan. 8,

13

2004, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals has similarly held "that the Legislature did not intend to authorize separate punishments for the offenses of aggravated assault with a deadly weapon against a public servant and intoxication assault when the convictions for those offenses are based upon the same assaultive conduct against a single person." *Shelby*, 448 S.W.3d at 434. Finally, in finding that an appellant's convictions for felony murder, intoxication manslaughter, and manslaughter violated his double-jeopardy rights, the Texas Court of Criminal Appeals said that "it is hard to fathom that the legislature intended for one drunk-driving accident to result in multiple homicide convictions for each victim." *Bigon*, 252 S.W.3d at 372. Likewise, we find it highly improbable that the Legislature intended for a person to be convicted of both intoxication manslaughter and aggravated assault for causing fatal injuries to the same victim.

## D.     Remedy for Double Jeopardy Violations on Counts 1−3

As previously mentioned, when a multiple punishment violation occurs, "the remedy is to affirm the conviction for the most serious offense and vacate the other convictions." *Bigon*, 252 S.W.3d at 372. Generally, the most serious offense is "the offense in which the greatest sentence was assessed." *Id.* at 373. Here, the punishments imposed for Counts 1–3 are identical: for each offense, Gunter was sentenced to sixty years' incarceration, no fine was assessed, and no restitution was ordered. Thus, we cannot determine the most serious offense by the general rule. In such instances, we may look to other distinguishing factors, such as the degree of each offense or an affirmative deadly weapon finding. *Id.* (degree of felony); *Villanueva v. State*, 227 S.W.3d 744, 749

14

(Tex. Crim. App. 2007) (affirmative deadly weapon finding). These factors also prove fruitless because Counts 1–3 are all second-degree felonies enhanced to the punishment range of a first-degree felony, and each count included an affirmative deadly weapon finding.

The Texas Court of Criminal Appeals has suggested that, with all other factors being equal, the most serious offense "is the offense named in the first verdict form," and generally "this will be the offense described in Count I of the indictment." *Ex parte Cavazos*, 203 S.W.3d 333, 339 n.8 (Tex. Crim. App. 2006); *see also Ruth v. State*, No. 13-10-00250-CR, 2011 WL 3840503, at *8–9 (Tex. App.—Corpus Christi–Edinburg Aug. 29, 2011, no pet.) (mem. op., not designated for publication) (using the "first-indicted offense" to break the tie when all else was equal). In this case, because the case was tried to the bench, there was no jury verdict form; however, Count 1 of the indictment was for intoxication manslaughter. Under these circumstances, we determine that intoxication manslaughter was the most serious offense. *See id.* Accordingly, we affirm the conviction for intoxication manslaughter and vacate the convictions for aggravated assault. *See id.*

### E.    Injury to a Child and Endangering a Child

By his last sub-issue, Gunter contends that his convictions on Counts 4 and 6 violate double jeopardy because endangering a child is a lesser included offense of injury to a child. However, "[a] person who is subject to prosecution under both [§ 22.04, defining injury to a child,] and another section of [the penal] code may be prosecuted under either or both sections." TEX. PENAL CODE ANN. § 22.04(h). Thus, the Legislature has expressed a clear intent to allow multiple punishments for the same conduct when a person commits

15

injury to a child and a violation of any other penal code section, including endangering a child. *Mayhew v. State*, 271 S.W.3d 294, 300–01(Tex. App.—Beaumont 2008, no pet.) ("Since the section of the Penal Code that proscribes endangering a child is found within another section of the Texas Penal Code, and the Legislature expressly authorized multiple punishments, the multiple concurrent sentences imposed in this case are not constitutionally prohibited."); *see Jimenez v. State*, 240 S.W.3d 384, 417–18 (Tex. App.—Austin 2007, pet. ref'd) (affirming multiple punishments for injury to a child and murder); *see also Herrera v. State*, No. 13-11-00036-CR, 2011 WL 5005581, at *10 (Tex. App.—Corpus Christi–Edinburg Oct. 20, 2011, pet. ref'd) (mem. op., not designated for publication) (affirming multiple punishments for injury to a child and capital murder). Gunter's third sub-issue is overruled.[5]

## V. CONCLUSION

We vacate Gunter's convictions under Count 2 and Count 3 for aggravated assault and affirm the remainder of his convictions.

GINA M. BENAVIDES
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
8th day of June, 2023.

---

[5] Gunter has not asked us to examine whether his convictions for intoxication manslaughter and endangering a child violate double jeopardy, and we decline to address this unassigned error. *See Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008) ("In the case of a double-jeopardy violation, the issue may be addressed as an unassigned error when the violation is apparent from the face of the record." (citing *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000))).