

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-1544-12

**CHRISTOPHER GARFIAS, Appellant**

**v.**

**THE STATE OF TEXAS**

ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE SECOND COURT OF APPEALS
TARRANT COUNTY

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, PRICE, and HERVEY, JJ., joined. COCHRAN, J., filed a concurring opinion, in which WOMACK, JOHNSON, and ALCALA, JJ., joined.

## O P I N I O N

Christopher Garfias was charged with aggravated robbery by threat and aggravated assault causing bodily injury and was convicted of both counts by jury. On appeal, Garfias argued that these multiple convictions violate his constitutional right to be free from double jeopardy. The Second Court of Appeals agreed, and vacated his sentence for aggravated

robbery.[1]  Because we do not agree that the Double Jeopardy Clause was violated in this case, we will reverse the court of appeals' judgment.

## BACKGROUND

In the early morning of March 1, 2006, Christopher Garfias went to a gas station in Hurst, Texas.  The store attendant that morning was Shahid Shahid, who admitted Garfias inside.  At some point later, Shahid heard a gunshot and the sound of breaking glass.  He saw Garfias outside the store with a gun in his hand.  Garfias reentered the store and pointed his gun at Shahid, who asked him not to shoot.  Garfias shot Shahid four times at close range.

Garfias was indicted for aggravated robbery by threat, a first-degree felony,[2] and for aggravated assault causing bodily injury, a second-degree felony.[3]  The indictment read as follows:

> CHRISTOPHER GARFIAS, . . . on or about the 1st day of March 2006, did
>
> THEN AND THERE INTENTIONALLY OR KNOWINGLY, WHILE IN THE COURSE OF COMMITTING THEFT OF PROPERTY AND WITH INTENT TO OBTAIN OR MAINTAIN CONTROL OF SAID PROPERTY, THREATEN OR PLACE SHAHID SHAHID IN FEAR OF IMMINENT BODILY INJURY OR DEATH, AND THE DEFENDANT USED OR EXHIBITED A DEADLY WEAPON, TO-WIT: A FIREARM,
>
> COUNT TWO: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT . . . DID INTENTIONALLY OR

---

[1]  *Garfias v. State*, 381 S.W.3d 626, 635 (Tex. App.—Fort Worth 2012) (hereinafter *Garfias II*).

[2]  TEX PENAL CODE § 29.03(a)(2), (b) (West 2012).

[3]  *Id.* § 22.02(a)(2), (b).

KNOWINGLY CAUSE BODILY INJURY TO SHAHID SHAHID BY
SHOOTING HIM WITH A FIREARM AND THE DEFENDANT DID USE
OR EXHIBIT A DEADLY WEAPON DURING THE COMMISSION OF
THE ASSAULT, TO-WIT: A FIREARM[.]

Garfias pleaded not guilty and was convicted on both counts by the jury. After hearing

additional evidence, the jury assessed his punishment at sixty years' confinement for the

aggravated robbery conviction and life imprisonment for the aggravated assault conviction.[4]

The trial judge ordered that the sentences run concurrently.

Garfias did not argue either before or during trial that the Double Jeopardy Clause was

implicated by the multiple offenses for which he had been charged. He raised this argument

for the first time on appeal, alleging multiple punishments had been imposed upon him for

the same offense.[5] In addressing this claim, the court of appeals employed the "same

elements test" established in *Blockburger v. United States*.[6] The court determined that

because aggravated robbery and aggravated assault, as charged in the indictment, each

required proof of at least one element that the other did not, a double-jeopardy violation was

not apparent on the face of the record and thus Garfias had not preserved his complaint on

---

[4] Garfias's sentences were enhanced by a prior felony conviction. *See* TEX PENAL
CODE § 12.42(b), (c) (West 2012).

[5] *Garfias v. State*, No. 2-06-398-CR, 2008 WL 2404268 at *1 (Tex. App.—Fort
Worth June 12, 2008) (not designated for publication) (hereinafter *Garfias I*).

[6] *Id.* (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

appeal.[7]

This Court granted Garfias's petition for discretionary review, vacated the court of appeals' judgment, and remanded the appeal.[8] We indicated that while the court of appeals had conducted a proper *Blockburger* analysis, the question of whether multiple punishments violated double jeopardy did not end there.[9] An accused may be punished for two offenses even though they would be regarded as the same under a *Blockburger* analysis if the Legislature had otherwise made clear its intention that he should be.[10] We remanded the case to the court of appeals for that court to examine other indicia of legislative intent.[11]

On remand, the court of appeals examined the similarity between aggravated assault and aggravated robbery under the Texas Penal Code.[12] The court stated that because of the similarity between how these offenses could have been charged under the evidence of this case, the Legislature could not have intended for the offenses to be punished multiply.[13] Despite finding that aggravated robbery by threat and aggravated assault causing bodily

---

[7] *Id.* at *2.

[8] *Garfias v. State*, No. PD-1323-08, 2011 WL 2674848 at *3 (Tex. Crim. App. June 29, 2011) (not designated for publication).

[9] *Id.* at *1–2.

[10] *Id.* at *2 (citing *Gonzales v. State*, 304 S.W.3d 838, 845–46 (Tex. Crim. App. 2010)).

[11] *Id.* at *2–3.

[12] *Garfias II*, 381 S.W.3d at 632.

[13] *Id.*

injury are two separate offenses with different underlying gravamina, the court of appeals ultimately concluded that the Legislature could not have intended to allow multiple punishments in this case.[14] Based on this holding, the court vacated Garfias's conviction for aggravated robbery and affirmed his conviction for aggravated assault.[15] This Court granted review to determine whether the court of appeals erred in considering how the offenses could have been charged in making a double jeopardy determination, and whether, in the alternative, the facts of this case present two discrete events that do not implicate the Double Jeopardy Clause in the first instance.

## ANALYSIS

Garfias failed to raise his double jeopardy claim to the trial court. However, such a claim may be raised for the first time on appeal when (1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest.[16] We must therefore first determine whether the undisputed facts show that a double jeopardy violation is clearly apparent in this case.

There are three types of double jeopardy claims: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and

---

[14] *Id.* at 632–33.

[15] *Id.* at 635.

[16] *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

(3) multiple punishments for the same offense.[17]  A multiple-punishments violation can arise

either in the context of lesser-included offenses, where the same conduct is punished under

a greater and a lesser-included offense, and when the same conduct is punished under two

distinct statutes where the Legislature only intended for the conduct to be punished once.[18]

Garfias asserts that the latter has occurred in this case.

The Legislature has the power to establish and define crimes and few, if any,

limitations are imposed upon this power by the Double Jeopardy Clause.[19]  Thus the true

inquiry in a multiple-punishments case is whether the Legislature intended to authorize the

separate punishments.[20]  There are two ways in which legislative intent can be ascertained:

by analyzing the elements of the offenses in question, or by identifying the appropriate "unit

of prosecution" for the offenses.[21]  This Court has held that an "elements" analysis is

appropriate when the offenses in question come from different statutory sections,[22] while a

"units" analysis is employed when the offenses are alternative means of committing the same

---

[17]  *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006); *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008).

[18]  *Langs*, 183 S.W.3d at 685.

[19]  *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011); *Ex parte Hawkins*, 6 S.W.3d 554, 555–557 (Tex. Crim. App. 1999).

[20]  *Ervin v. State*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999).

[21]  *See Hawkins*, 6 S.W.3d at 557 n. 8 (citing *Blockburger*, 284 U.S. at 302) (noting the distinction between the "units" test and the "elements" test).

[22]  *E.g.*, *Ervin*, 991 S.W.2d at 814; *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008); *Ex Parte Denton*, 399 S.W.3d 540, 545–46 (Tex. Crim. App. 2013).

statutory offense.[23]  In this case, Garfias complains of convictions stemming from different statutory sections, so we must embark on an "elements" analysis to determine whether multiple-punishments principles have been violated.

The starting point of an "elements" analysis in the multiple-punishments context is the *Blockburger* test, used to determine whether each of the offenses requires proof of an element that the other does not.[24]  In doing so, courts must focus on the elements alleged in the charging instrument—not on the offense as defined in the Penal Code.[25]  Under this so-called cognate-pleadings approach, double-jeopardy challenges can be made even against offenses that have different statutory elements, if the same facts required to convict are alleged in the indictment.[26]

But as we indicated in our prior opinion, the *Blockburger* test is only a starting point—it is a rule of statutory construction, not the exclusive indicator of a double-jeopardy violation.[27]  The *Blockburger* test cannot allow two punishments for a single course of

---

[23]  *E.g.*, *Bigon*, 252 S.W.3d at 371–72 ("Usually, analysis of an allowable unit of prosecution involves a situation in which two offenses from the same statutory section are charged . . . ."); *Harris*, 359 S.W.3d at 629–30; *Loving v. State*, 401 S.W.3d 642, 647–48 (Tex. Crim. App. 2013).

[24]  *Bigon*, 252 S.W.3d at 370 (citing *Blockburger*, 284 U.S. at 304).

[25]  *Bigon*, 252 S.W.3d at 370; *Parrish v. State*, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994).

[26]  *Bigon*, 252 S.W.3d at 370.

[27]  *Id.* at 370–71.

conduct when the Legislature intended to authorize only one.[28] To facilitate this analysis, in *Ervin v. State*, we set forth a list of non-exclusive factors designed to help courts in the absence of clear guidance from the Legislature:

> whether offenses are in the same statutory section; whether the offenses are phrased in the alternative; whether the offenses are named similarly; whether the offenses have common punishment ranges; whether the offenses have a common focus; whether the common focus tends to indicate a single instance of conduct; whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*; and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double-jeopardy purposes.[29]

We have indicated that the "focus" or "gravamen" of a penal provision should be regarded as the best indicator of legislative intent when determining whether a multiple-punishments violation has occurred.[30] For example, in *Bigon v. State*, we analyzed whether convictions for both felony murder and intoxication manslaughter violated the Double Jeopardy Clause.[31] The fact that both offenses were result-oriented and shared the same focus—the death of an individual—was a key factor in our decision that the Legislature did

---

[28] *Gonzales*, 304 S.W.3d at 845 (citing *Ex parte Ervin*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999)).

[29] *Bigon*, 252 S.W.3d at 370 (citing *Ervin*, 991 S.W.2d at 814).

[30] *Gonzales*, 304 S.W.3d at 848 (citing *Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008) (the focus of "result-of-conduct" crimes create separate offenses for different types of results, while the focus of "nature-of-conduct" crimes create separate offenses for different types of conduct)).

[31] *Bigon*, 252 S.W.3d at 370.

not intend to permit multiple punishments in that case.[32]

One other factor reviewing courts should consider when making an "elements" analysis is the determination of the allowable unit of prosecution for the offenses in question. Although such a determination is a necessary step when a multiple-punishments claim deals with two offenses from the same statutory section, we have stated that, even in an "elements" analysis, such a determination can be indicative of legislative intent.[33]

As we indicated in our prior opinion, the court of appeals correctly held that the *Blockburger* test reveals that the offenses of aggravated robbery by threat and aggravated assault causing bodily injury, as charged in Garfias's indictment, each contain an element that the other does not.[34] But as this does not end the analysis of whether the Legislature intended for Garfias's conduct to be punished multiply, we now consider that question through the lens of the *Ervin* factors outlined above.

## A. ROBBERY AND ASSAULT

The court of appeals, in deciding that Garfias's convictions violated multiple-punishments principles, held that "[a]ggravated robbery and aggravated assault share a common focus. . . . [T]he gravamen of robbery offenses, including aggravated robbery, is the

---

[32] *Id.* at 371.

[33] *Id.* at 371–72 (a units-of-prosecution determination is not necessary to an "elements" analysis, but "the spirit behind the principle is fitting" in such a case).

[34] *Garfias I*, 2008 WL 2404268 at *2.

defendant's assaultive conduct."[35]   It concluded that because of the "closeness of the relationship" between the two offenses, "[w]e cannot fathom . . . that under the circumstances of this case, the legislature would intend to punish one continuous assaultive act under multiple assault-related offenses."[36]

The court of appeals' conclusion was in error.  It is true that we have previously held that robbery is an assaultive offense,[37] and that the unit of prosecution for assaultive offenses—including robbery—is each victim.[38]   However, it is overly simplistic to make a blanket statement that the gravamen of all robbery offenses is the "assaultive conduct." Simple assault and simple robbery, the underlying offenses of those that Garfias was charged with, can be committed in two ways: either by "threat[ening] or plac[ing] another in fear of imminent bodily injury or death"[39]—assault or robbery by threat—or by "caus[ing] bodily injury to another"[40]—assault or robbery causing bodily injury.  In Garfias's case, the "use[] or exhibit[ion]" of a deadly weapon during the commission of the offense elevated simple robbery by threat to aggravated robbery by threat, and simple assault causing bodily injury

---

[35]   *Garfias II*, 381 S.W.3d at 631.

[36]   *Id.* at 631, 633.

[37]   *Denton*, 339 S.W.3d at 546; *Hawkins*, 6 S.W.3d at 560.

[38]   *Denton*, 399 S.W.3d at 546 (citing *Young v. State*, 283 S.W.3d 854, 862 (Tex. Crim. App. 2009)); *Hawkins*, 6 S.W.3d at 560.

[39]   TEX. PENAL CODE §§ 29.02(a)(2) (robbery), 22.01(a)(2) (assault) (West 2012).

[40]   *Id.* §§ 29.02(a)(1) (robbery), 22.01(a)(2) (assault).

to aggravated assault causing bodily injury.[41]

Thus while the gravamen of robbery or assault can be generally termed "the defendant's assaultive conduct against each victim,"[42] the individual gravamina of assault or robbery by threat and assault or robbery causing bodily injury differ significantly. As we have noted in the past, an assaultive offense by threat is a conduct-oriented offense, while an assaultive offense causing bodily injury is a result-oriented offense.[43] This case is illustrative of the distinction between the two gravamina—Garfias's aggravated robbery by threat conviction focused on his threatening conduct, which violated the personal security of the victim.[44] On the other hand, the conviction of aggravated assault causing bodily injury focused solely on the actual harm inflicted. Thus the gravamen of the two offenses in question—deemed the "best indicator" of legislative intent for an "elements" analysis[45]—indicates that the Legislature intended to allow multiple punishments for

---

[41] *See id.* §§ 29.03(a)(2), 22.02(a)(2).

[42] *Denton*, 399 S.W.3d at 546 (citing *Jones v. State*, 323 S.W.3d 885, 889 (Tex. Crim. App. 2010)).

[43] *See Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008); *see also Denton*, 399 S.W.3d at 546 ("the gravamen of the offense of aggravated assault is the specific type of assault defined in [the Penal Code].").

[44] *See Hawkins*, 6 S.W.3d at 560 (citing *Chestnut v. State*, 567 S.W.2d 1, 2 (Tex. Crim. App. 1978) ("The primary interest protected by the robbery offenses is the security of the person from bodily injury or threat of bodily injury that is committed in the course of committing theft.")).

[45] *Gonzales*, 304 S.W.3d at 848.

aggravated robbery by threat and aggravated assault causing bodily injury.

The other *Ervin* factors also support this conclusion. First, aggravated robbery by threat and aggravated assault causing bodily injury are not contained in the same statutory section. Second, the offenses are not named similarly. And third, the offenses do not have identical punishment ranges—aggravated assault in this case is a second degree felony, while aggravated robbery is a first degree felony.[46]

A determination of the allowable unit of prosecution for the two offenses, which as noted above can be indicative of legislative intent in an "elements" analysis, also indicates that the Legislature intended to allow multiple punishments in this case. Garfias argues that because in *Ex parte Hawkins*, we stated that the appropriate unit of prosecution for robbery was each victim, double-jeopardy principles bar his conviction for multiple assaultive offenses in this case. However, Garfias overlooks the fact that in *Hawkins*, we were employing a "units" analysis to answer the question of whether a defendant could be convicted twice for robbery by threat, committed during the same continuing course of conduct against two different victims.[47] *Hawkins* did not deal with the issue we are grappling with today—whether multiple-punishments principles permit convictions for both an assaultive offense by threat and an assaultive offense causing bodily injury, committed during the same continuing course of conduct and against the same victim. Because this double-

---

[46] *See* TEX. PENAL CODE §§ 22.02(b) (aggravated assault is a second degree felony), 29.03(b) (aggravated robbery is a first degree felony).

[47] *Hawkins*, 6 S.W.3d at 555.

jeopardy challenge involves two different statutes, *Hawkins* does not force our hand as to a units-of-prosecution determination in this case.

In the end, the units-of-prosecution determination indicates that the Legislature intended to allow Garfias's multiple punishments. When no express statement defining the allowable unit of prosecution is provided by the Legislature—and none is provided in this case—the gravamen of an offense best describes the allowable unit of prosecution.[48] As indicated above, the gravamina of Garfias's two convictions differ, and therefore the allowable units of prosecution for the two offenses are not the same.[49]

## B. THE COURT OF APPEALS' ARGUMENTS

Despite the fact that the *Blockburger* test, the *Ervin* factors, and the applicable units of prosecution all point towards the Legislature's intent to allow multiple punishments in this case, the court of appeals reached the opposite conclusion.[50] Its decision was largely based on two non-textual arguments that, in its view, demonstrated that the Legislature could not have possibly intended for a robbery by threat and an assault causing bodily injury to be punished multiply. We find these arguments unpersuasive.

First, the court of appeals noted that under the facts of the case, the State could have charged Garfias with aggravated robbery and aggravated assault in such a way that the

---

[48] *Loving*, 401 S.W.3d at 647; *Harris*, 359 S.W.3d at 630; *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999).

[49] *See Loving*, 401 S.W.3d at 649; *Vick*, 991 S.W.2d at 833.

[50] *Garfias II*, 381 S.W.3d at 635.

assault would have been a lesser-included offense of the robbery.[51] "The fact that double jeopardy principles would have presumptively precluded multiple punishments under the facts of this case . . . if those offenses were charged in other ways supported by the evidence indicates to us that double jeopardy should likewise prevent multiple punishments even though the offenses were carefully charged through a method that avoided offending *Blockburger*."[52] Unfortunately, this type of hypothetical reasoning was in error. As indicated above, a double-jeopardy determination hinges not on the statutory elements of the offenses, but on the elements of the offenses as alleged in the charging instrument.[53] What the State could have charged—in other words, a hypothetical charging instrument—does not factor into a reviewing court's determination, and cannot serve as the basis of a double-jeopardy violation.

The second non-textual argument relied upon by the court of appeals had to do with "stop-action prosecution." The court was concerned that allowing multiple punishments in this case would authorize prosecutors to carve a single continuing course of conduct into multiple offenses to avoid the safeguards of the Double Jeopardy Clause.[54] Because Garfias's commission of the assault by threat was "necessary to, incident to, and subsumed

---

[51] *Id*. at 632.

[52] *Id.*

[53] *Bigon*, 252 S.W.3d at 370; *Parrish*, 869 S.W.2d at 354.

[54] *Garfias II*, 381 S.W.3d at 633.

by appellant's causing bodily injury to Shahid by shooting him," the court asserted that the Legislature could not have intended for the two offenses to be punished multiply when one was merely a "step along the way" towards the other.[55]

In reaching its conclusion, the court of appeals cited two decisions of this Court: *Lopez v. State*[56] and *Patterson v. State*.[57] We do not agree that these cases support the court of appeals' argument. In *Lopez*, this Court addressed whether multiple-punishments principles were violated by Lopez's conviction of both possession of a controlled substance with intent to deliver and delivery of a controlled substance by offer of safe, with respect to the same quantity of cocaine.[58] We held that the two convictions violated the Double Jeopardy Clause because "the steps in this single drug transaction were all 'the result of the original impulse,' and therefore each step was not a 'new bargain.'"[59] The rationale underlying our decision was that the two offenses shared the same gravamen: "the distribution of dangerous drugs in our society."[60] The identical rationale of the offenses

---

[55] *Id.* at 633–34 (citing *Naji v. State*, No. 02-06-00260-CR, 2007 WL 1266872, at *2 (Tex. App.—Fort Worth April 26, 2007, pet. ref'd) (holding that aggravated assault causing bodily injury was a necessary part of aggravated robbery by threat, and a "step along the way" could not constitute a separate offense).

[56] *Lopez v. State*, 108 S.W.3d 293 (Tex. Crim. App. 2003).

[57] *Patterson v. State*, 152 S.W.3d 88 (Tex. Crim. App. 2004).

[58] *Lopez*, 108 S.W.3d at 294; *see also* TEX. HEALTH & SAFETY CODE § 481.112(a) (West 2012).

[59] *Lopez*, 108 S.W.3d at 301 (quoting *Blockburger*, 284 U.S. at 303).

[60] *Id.* at 299–300.

meant that the underlying unit of prosecution was the same for both offenses, and thus a conviction of both would violate the Double Jeopardy Clause.

Thus *Lopez* does not stand for the proposition that a defendant can never be convicted of multiple offenses that occur as "points along a continuum" in a course of a criminal transaction.[61]  Instead, *Lopez* indicates that a defendant can never be convicted of multiple offenses when those offenses share the same underlying gravamen.[62]  In this way, *Lopez* supports our jurisprudence, as set forth above, that legislative intent is the guiding principle behind a multiple-punishments analysis.

In *Patterson*, this Court was asked to address whether a conviction for indecency with a child by exposure was barred by double-jeopardy principles, when the defendant had also been convicted of aggravated sexual assault by penetration.[63]  *Patterson* is not on point in this case for two reasons.  First, we declined to resolve *Patterson* on double-jeopardy grounds, instead deciding it by construing a statute addressing concurrent versus consecutive sentencing.[64]  And second, even if we had decided the constitutional issue, it is clear that the elements of the offenses as charged against the defendant were the same under the *Blockburger* test.  Under the cognate-pleadings approach, when the facts necessary to prove

---

[61]  *See id.* at 297.

[62]  *Id.* at 299–300.

[63]  *Patterson*, 152 S.W.3d at 89.

[64]  *Id.* at 91–92.

one offense are included within the proof necessary to establish another, the offenses are considered the "same" for double-jeopardy purposes, and multiple punishments are barred unless the Legislature has clearly and specifically authorized them.[65] In *Patterson*, the defendant's exposure—proof necessary for the indecency conviction—was included within the proof necessary to establish the aggravated sexual assault by penetration.[66]

This case, on the other hand, cannot be resolved on that basis. The facts necessary to prove Garfias's robbery by threat conviction—namely that Shahid was placed in fear of imminent bodily injury or death, and that Garfias committed the offense while in the course of committing theft—were not included within the proof necessary to establish the assault by causing bodily injury, which required only proof that Garfias caused Shahid bodily injury by shooting him.

Thus neither *Patterson* nor *Lopez* supports the court of appeals' determination that the antecedent robbery was "subsumed" into the assault and barred by double jeopardy. The court of appeals freely acknowledged that the *Ervin* factors weighed against its decision, but chose to ignore them and reach the opposite result.[67] In doing so, it departed from long-standing double-jeopardy jurisprudence, which requires courts to analyze double-jeopardy

---

[65] *Parrish*, 869 S.W.2d at 354; *see also Patterson*, 152 S.W.3d at 94 (Hervey, J., concurring).

[66] *Patterson*, 152 S.W.3d at 92.

[67] *Garfias II*, 381 S.W.3d at 635 ("We recognize that some of the [*Ervin* factors] weigh in favor of a conclusion that the legislature intended multiple punishments . . . .").

claims by determining legislative intent via established rules of statutory construction.

## CONCLUSION

Because double-jeopardy principles were not violated in this case, no double-jeopardy violation is clearly apparent from the face of the record. We therefore do not need to reach the State's claim that the facts of this case involve two discrete events of criminal conduct. The judgment of the court of appeals is reversed and Garfias's conviction for aggravated robbery with a deadly weapon is reinstated.

DELIVERED: February 26, 2014

PUBLISH