

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00187-CR

———————————————

JOSEPH MULLASERIL VARUGHESE, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 5
Tarrant County, Texas
Trial Court No. 1802401

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Joseph Mullaseril Varughese was charged by information with one count of misdemeanor assault causing bodily injury to his wife, Maya,[1] *see* Tex. Penal Code Ann. § 22.01(a)(1), (b), and one count of terroristic threat to a family or household member, *see id.* § 22.07. The jury found Appellant guilty on the first count and not guilty on the second count. Appellant argues on appeal that the trial court should have granted his directed verdict on the ground that insufficient evidence established that he caused bodily injury to Maya or that he did so intentionally, knowingly, or recklessly. However, Maya testified about what happened that day, and a police officer testified about what she observed when she responded to Maya's 911 call, and that testimony, if believed, was sufficient to establish the challenged elements. Because the evidence was sufficient to prove the challenged offense elements, we will affirm.

## Background

At trial, Maya testified that on October 25, 2023, Appellant came home and argued with her about how her SUV was parked in the garage. Appellant started yelling, "I told you to move your car towards the side of the garage yesterday and you didn't move the car." Maya told him that she had not been feeling well but would

---

[1]We use an alias to refer to the complainant. *See* 2nd Tex. App. (Fort Worth) Loc. R. 7; *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

2

move it after she finished her lunch. Appellant threw a full water bottle at her, which hit her hand when she raised her plate to try to block the bottle, causing her pain. She got up to put her plate into the sink and move her vehicle, but Appellant was "continuingly yelling at [her] and said, 'I'm going to kill you' and started kicking stuff." As she was getting up, he "came running towards [her] and . . . kicked [her] on [her] left leg," which hurt but did not leave a mark. He then kicked the garbage can, which hit her left foot. Maya ran into the bedroom, retrieved her bag and her keys, and tried to leave. Appellant grabbed her chest "with [her] shirt," hurting her and leaving a mark on her chest. As Maya tried to leave, Appellant told her, "Don't come back. I'm going to kill you." Maya was scared that he would continue to throw things at her— and he was near the kitchen that contained knives, utensils, and other objects—so she left and called 911. Maya also testified about an April 2023 incident during which Appellant had grabbed her neck, dragged her from their couch, and kicked her.

Euless Police Officer Gloria Lozano testified about responding to Maya's 911 call. Lozano called Maya and asked her to return to the house, and once Maya had done so, Lozano spoke to her about what happened. To Lozano, Maya looked afraid. Maya showed Lozano the marks on her chest from Appellant's grabbing her, and she reported to Lozano that "she felt physical pain." Lozano took photos of the marks on Maya's chest. Lozano then went inside to speak to Appellant. After speaking with him, she arrested him.

3

At trial, during cross-examination of Lozano, Appellant played an excerpt from Lozano's body camera video from that day. In the video, Maya described for Lozano Appellant's grabbing her by her shirt. When asked by Lozano if she had marks on her chest, Maya stated, "Ye—I don't know," and pulled down the neck of her shirt to look. Lozano also looked and said, "I do see marks." Lozano stated on the video that she also saw a mark that looked old, and Maya agreed with her observation. Lozano took photographs of the marks that she saw.

The State introduced the photographs of Maya's chest as well as photographs of damage to the trash can and to a cabinet. Lozano testified about the photos of Maya's chest and stated that of the multiple marks that she saw on Maya's chest that day, one of them "was nothing to do with the assault." She stated that Maya had told her that one of the marks was old, although "[y]ou cannot see it on there [in the picture]."

After Lozano's testimony, the State rested, and Appellant moved for a directed verdict on both counts "on the grounds of didn't identify the state of Texas" and on count two on the ground of "not an imminent threat." The trial court denied the motion.

Appellant then testified to his version of what happened. He claimed that he had asked Maya to move her car so he could park in the garage because he had undergone a procedure on his face that morning, and his doctor had told him that he needed to stay out of the sun for a few days. He stated that Maya refused, and "[t]hen

4

we talked a little bit." He denied throwing the water bottle directly at Maya, stating, "Later I had a water bottle in my hand. I got a little bit angry and [threw] it on the floor." Then, he said, Maya "suddenly stood up, came towards [him], [and] was trying to push [him]," so he tried to defend himself. He stated that they had "something like a little bit" of a scuffle, but their bodies did not touch. He then went outside, moved his car to the street, came inside, changed clothes, and went into the kitchen. Maya then left. A short time later, the police arrived. Appellant claimed that the marks on Maya's chest were marks that she has had since they married in 2000, and he denied kicking her or the garbage can.

The jury found Appellant guilty of assault (count one) and not guilty of terroristic threat (count two). The trial court assessed punishment at 365 days in the Tarrant County jail, probated for 12 months.

## Discussion

In his sole point on appeal, Appellant argues that the trial court abused its discretion by failing to grant his motion for directed verdict because the evidence was insufficient to establish that he caused Maya injury or that he did so intentionally, knowingly, or recklessly.

### I. Standard of Review

The directed-verdict ground asserted by Appellant as to the assault charge—"didn't identify the state of Texas"—differs from his issue on appeal. However, we treat a complaint about a trial court's failure to grant a motion for directed verdict as a

challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). A sufficiency complaint may be made for the first time on appeal. *Baltimore v. State*, 689 S.W.3d 331, 346 (Tex. Crim. App. 2024); *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012). Thus, Appellant did not need to preserve his legal sufficiency arguments to raise them on appeal.

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the

6

State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014).

## II. Analysis

### A. Relevant Law

#### 1. Bodily Injury

Appellant was charged with assault causing bodily injury. Specifically, the information alleged that he had "intentionally, knowingly, or recklessly caus[ed] bodily injury to [Maya], a member of [his] family or household . . . by grabbing or scratching her with [his] hand and/or by kicking her with [his] foot." A person commits assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." Tex. Penal Code Ann. § 22.01. "Bodily injury" includes "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(8). "Any physical pain, however minor, will suffice to establish bodily injury," and "[a] fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). "[E]ven relatively minor physical contact" falls within the definition "if it constitutes more than offensive touching." *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009).

7

## 2. Mental State

Assault by causing bodily injury is a "result-oriented" offense, and thus "'the State must prove that the defendant caused the result'—that is, bodily injury to the complainant—'with the requisite culpable mental state.'" *Bakare v. State*, No. 02-19-00447-CR, 2021 WL 2460857, at *2 (Tex. App.—Fort Worth June 17, 2021, no pet.) (mem. op., not designated for publication) (quoting *Baldit v. State*, 522 S.W.3d 753, 759 (Tex. App.—Houston [1st Dist.] 2017, no pet.)); *see also Garfias v. State*, 424 S.W.3d 54, 60 (Tex. Crim. App. 2014). A defendant's mental state may be inferred from the circumstances, including the defendant's words and actions. *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018).

Penal Code Section 6.03 defines the relevant mental states. Applying those definitions here, Appellant acted intentionally "with respect to . . . a result of his conduct" if it was his "conscious objective or desire to . . . cause the result." *See* Texas Penal Code Ann. § 6.03(a). Appellant acted knowingly "with respect to a result of his conduct" if he was "aware that his conduct [was] reasonably certain to cause the result." *See id.* § 6.03(b). Finally, Appellant acted recklessly with respect to the result of his conduct if he was "aware of but consciously disregard[ed] a substantial and unjustifiable risk that the . . . result [would] occur." *See id.* § 6.03(c). The risk must have been "of such a nature and degree that its disregard constitute[d] a gross deviation from the standard of care that an ordinary person would [have] exercise[d] under all the circumstances as viewed from [Appellant's] standpoint." *Id.*

8

**B. Application**

Appellant argues that "there was no physical sign as a result of the water bottle being thrown, such as bruising or marks" and that despite Maya's testimony that Appellant kicked her leg and kicked the garbage can that hit her in the leg, neither act resulted in pain or physical marks.

Maya testified that Appellant kicked her leg, which hurt. She also testified that when he grabbed her chest, it hurt and left a mark. Appellant testified that he did not kick or grab her and that the marks on her chest were already there before that day, but the jury was free to believe Maya's testimony and to disbelieve Appellant's. *Martin* 635 S.W.3d at 679; *Braughton*, 569 S.W.3d at 608. Accordingly, the jury had sufficient evidence from which it could believe that Appellant's acts caused Maya bodily injury. *See Garcia*, 367 S.W.3d at 688; *Laster*, 275 S.W.3d at 524; *see also Wingfield v. State*, 282 S.W.3d 102, 105 (Tex. App.—Fort Worth 2009, pet. ref'd).

Regarding Appellant's mental state, Maya testified that Appellant came into the house yelling and began saying that he was going to kill her, from which the jury could infer that he was angry and that his subsequent actions were taken in anger. If the jury credited Maya's testimony that Appellant came running at her and kicked her, the jury could infer that he was aware that his kicking her was reasonably certain to cause her injury. *See* Tex. Penal Code Ann. § 6.03(b); *Bin Fang v. State*, 544 S.W.3d 923, 929 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("The complainant said during the 911 call that appellant beat her with his fist. A rational jury could infer that appellant acted

9

knowingly because a person would be aware that beating someone with a fist is reasonably certain to cause bodily injury."). Even without considering Maya's testimony that Appellant threw a full water bottle at her[2] or grabbed her by her shirt in a manner that caused pain to her chest and left marks, the jury had sufficient evidence to find that Appellant caused bodily injury with the culpable mental state.

Because the evidence was sufficient to establish beyond a reasonable doubt that Appellant caused Maya bodily injury with the requisite culpable mental state, we overrule his issue.

### Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 27, 2025

---

[2]The State was not limited to proving assault through the acts charged in the indictment. *See Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012); *Bin Fang*, 544 S.W.3d at 929.