

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00005-CR

---

JOE HERRERA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 54th District Court
McLennan County, Texas[1]
Trial Court No. 2022-2001-C2, Honorable Alan Bennett, Presiding

---

July 23, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Joe Herrera, appeals from his convictions for assault family violence by occlusion (habitual) and assault causing injury family violence with a prior conviction.[2] A

---

[1] This appeal was originally filed in the Tenth Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

[2] TEX. PENAL CODE ANN. § 22.01(a)(1),(b)(2)(A), (B). Appellant pleaded true to the enhancement and habitual offender provisions. The range of punishment applicable to Appellant was enhanced to a term of confinement of "life, or for any term of not more than 99 years or less than 25 years." TEX. PENAL CODE ANN. § 12.42(d).

jury assessed a punishment of 40 years of confinement for each conviction. The trial court sentenced Appellant accordingly and ordered the sentences run concurrently. We overrule Appellant's two issues and affirm the trial court's judgment.

## BACKGROUND

Appellant and the complainant, Marisa Espinoza, had been in an on-and-off romantic relationship since 1996. They have two children together, ages 29 and 11. Espinoza testified they had conducted a marriage ceremony but never filed official paperwork, and she would introduce Appellant as both her boyfriend or husband. At the time of the charged offense, Appellant had been living with Espinoza for about eight months after being released from custody in January 2022.

On September 9, 2022, Appellant and Espinoza had been arguing all day. The argument intensified after Appellant took Espinoza's truck and was gone longer than expected, which angered Espinoza. She began "blowing up his phone";[3] he would not answer her calls. When Appellant returned, the discussion escalated, with Appellant calling Espinoza names and then engaging in physical violence.

Appellant grabbed Espinoza by her hair and pulled her inside the house. Once inside the kitchen and dining room area, Appellant struck her in the face and head area with his hands. Espinoza testified he hit her "at least three times" with a closed fist. Appellant also grabbed Espinoza by the throat with his left hand, applying pressure with a force that caused her to feel she "was being suffocated. Like . . . they're cutting off your

---

[3] This is a colloquial expression meaning repeatedly calling or texting someone, often in an urgent or persistent manner. *See, e.g.*, K'ron, *Round of Applause*, (Atlantic Records 2020). ("She blowin' up my phone / Won't leave me alone / She get on my nerves / Where would I be without her?").

2

airway." Meanwhile, Appellant told Espinoza "he hates [her], he's going to kill [her], stuff like that." Espinoza had difficulty breathing, was "scared," and needed "to get help."

When Espinoza's brother walked into the room, Appellant released his grip. Espinoza immediately ran to the front door and called 911. Espinoza's voice was noticeably raspy as she tried to catch her breath. Police officers responding to the scene observed visible injuries on Espinoza's neck, photographed the injuries, and arrested Appellant for assault by strangulation.

Two days later, Appellant telephoned Espinoza from jail and told her to instruct prosecutors to drop the charges. During this call, he admitted he grabbed her by the "*pescuezo*," the Spanish word for "neck."

**ANALYSIS**

First Issue: Double Jeopardy

Appellant argues his convictions for both assault family violence by occlusion and assault family violence with a prior conviction constitute multiple punishments for the same offense, in violation of the constitutional prohibition against double jeopardy. He acknowledges the remedy for the alleged violation would be to "retain the conviction with the most serious punishment and vacate any remaining convictions" that violate double jeopardy. Appellant was sentenced to concurrent 40-year terms of imprisonment for both convictions.

(a) Preservation of Error

The State argues Appellant failed to preserve this issue. But a double-jeopardy claim may be raised for the first time on appeal when (1) the undisputed facts show the violation is clearly apparent on the record's face, and (2) enforcement of procedural default serves no legitimate state interest. *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006).

We hold these conditions are met. A claim is apparent on the face of the record if its resolution does not require additional proceedings to introduce more evidence. *Ex parte Denton,* 399 S.W.3d 540, 544 (Tex. Crim. App. 2013). Appellant's double jeopardy claim does not require additional proceedings. Moreover, the State presents no persuasive argument why enforcing procedural default serves any legitimate state interest under these circumstances. *See Brown v. State,* 640 S.W.3d 889, 892 (Tex. App.—Waco 2021, pet. ref'd); *Anderson v. State,* No. 10-01-00306-CV, 2003 Tex. App. LEXIS 6008, at *3 (Tex. App.—Waco July 2, 2003, pet. ref'd).

(b) Applicable Law

The Double Jeopardy Clause prohibits multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977); *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021). Multiple-punishment violations occur when the same conduct is punished under distinct statutes where the Legislature intended punishment only once. *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).

Here, Appellant contends that the Legislature intended only one punishment, arguing section 22.01(a) is the lesser-included offense of section 22.01(b)(2)(B)

4

(impeding normal breathing or circulation), which is merely an enhancement of the same criminal conduct. "A multiple-punishments violation can arise either in the context of lesser-included offenses, where the same conduct is punished under a greater and a lesser-included offense, and when the same conduct is punished under two distinct statutes where the Legislature only intended for the conduct to be punished once." *Garfias v. State,* 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).

Accordingly, we look to the statute's text to determine legislative intent. *Stevenson,* 499 S.W.3d at 850. It is undisputed that occlusion assault (Count I) and assault family violence with a prior (Count II) have different elements and that the State proved these elements at trial. Occlusion assault requires the State prove that a defendant impeded the normal breathing or blood circulation of the complainant, while this element is not required for assault family violence with a prior conviction.

This distinction is of critical importance. In *Ortiz v. State*, 623 S.W.3d 804 (Tex. Crim. App. 2021), the Court of Criminal Appeals addressed whether bodily-injury assault can be a lesser-included offense of occlusion assault and answered "No." The Court employed an "allowable unit of prosecution" analysis to examine what facts are required to prove each offense. Occlusion assault requires proof of a specific injury—"impeding normal breathing or circulation of the blood"—whereas simple assault requires proof of any "bodily injury," broadly defined as "physical pain, illness, or any impairment of physical condition." *Id.* at 806–07. While impeding breathing constitutes bodily injury, it is a distinct type that excludes other injuries. The Court illustrated this principle with an analogy:

> Impeding is exclusive of other injuries in the same way that a square is exclusive of other rectangles: A square is a rectangle, but other rectangles

5

are not squares; specifying "square" excludes non-square rectangles; and specifying "impeding" excludes non-impeding injuries.

For example, if a defendant were charged with occlusion assault, and the evidence showed that he stomped on the complainant's foot and caused pain, that assault would not be included in the charged offense because a non-impeding injury is not required to prove occlusion assault.

*Id.* at 807. The Court explained that even a non-impeding injury inflicted on the neck would not be proven by the same facts needed to prove occlusion assault. If pinching the neck caused pain but did not impede normal breathing or blood circulation, the assault would not be included because the assault by pinching would require proof of a different injury than impeding.

The facts in this appeal are very similar to those in *Brown v. State*, 640 S.W.3d 889 (Tex. App.—Waco 2021, pet. ref'd). *Brown* involved a defendant who committed both strangulation and other assaultive acts against his intimate partner during the same episode. The defendant was convicted of both occlusion assault of a household/family member and aggravated assault with a deadly weapon.

The Tenth Court of Appeals relied on *Ortiz's* methodology to hold that convictions for both offenses from the same incident did not violate double jeopardy. Using unit-of-prosecution analysis, the court determined that both result-oriented offenses have distinct gravamina: impeding is the focus of occlusion assault and defines its allowable unit of prosecution while excluding other injuries, whereas bodily-injury assault lacks a statutorily specified injury. *Id.* at 893. The court emphasized that the defendant's "actions in occluding the complainant's breathing or blood circulation were separate from other assaultive acts he committed against her . . . [even] [t]hough the offenses may have

6

occurred during the same criminal episode . . . ." *Id.* at 894. Therefore, the court reasoned the Double Jeopardy Clause was not implicated. *Id.* at 893–94.

Appellant argues that *Brown's* "conclusions are incorrect and both offenses are subject to double jeopardy protection." But as a transferee court from the Tenth Court of Appeals, we are required to follow *Brown's* holding, as that constitutes binding precedent on that court. *See* TEX. R. APP. P. 41.3; *Baker v. State*, No. 07-22-00286-CR, 2023 Tex. App. LEXIS 5857, at *1 (Tex. App.—Amarillo Aug. 7, 2023, pet. ref'd). "Texas courts follow vertical stare decisis (lower courts must follow the precedents of all higher courts) and horizontal stare decisis (three-judge panels must follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision)." *Earl v. State*, No. 03-23-00427-CR, 2025 Tex. App. LEXIS 4527, at *9–10 (Tex. App.—Austin June 27, 2025, no pet. h.) (*citing Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022)).

(c) Application to this Case

These binding decisions establish a clear rule: Espinoza's injury from occlusion assault was not merely different in *degree* from other assault injuries she received—it was different in *kind*. *Ortiz*, 623 S.W.3d at 809; *see also McCall v. State*, 635 S.W.3d 261, 268 (Tex. App.—Austin 2021, pet. ref'd). Though Appellant's offenses occurred during the same criminal episode, they are not the same offense for Double Jeopardy purposes because they involve different statutorily-specified injuries requiring proof of different facts. *Brown*, 640 S.W.3d at 894.

We overrule Appellant's first issue.

7

Second Issue: Evidence of Prior Domestic Violence

In his second issue, Appellant argues the trial court erred by permitting Espinoza to testify about prior instances of domestic violence between her and Appellant.

To preserve error regarding evidence admission, a party must object each time inadmissible evidence is offered, obtain a running objection, or request a hearing outside the jury's presence. *Martinez v. State,* 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *see also* TEX. R. EVID. 103(b). Here, Appellant voiced a relevance objection when the State began examining Espinoza about past domestic violence episodes, which the trial court overruled. He did not reurge that objection or request a running objection thereafter. Additional evidence of the 2014 judgment documenting Appellant's guilty plea for assault family violence was admitted without objection. Espinoza also testified without objection that she was the victim of that assault and that Appellant routinely asked her to drop charges after other past incidents.

Moreover, significant evidence of Appellant's guilt was admitted beyond the prior violence testimony. The jury also heard Appellant's recorded jail call admitting he grabbed her neck and related testimony.[4] It heard Espinoza's raspy voice on her 911 call. Espinoza described how Appellant pushed her down, hit her, and grabbed her throat, and showed the jury photographic evidence of her injuries.

Because Appellant did not continue objecting, request a running objection, or seek a hearing outside the jury's presence, any error was not preserved. *See, e.g., Ethington*

---

[4] Without objection, Detective Erin McCullough testified that Appellant told Espinoza on the jail call: "I didn't really strangle you, I just put my hands around your neck." McCullough also testified about studies showing strangulation victims are seven times more likely to be murdered by their abuser.

*v. State,* 819 S.W.2d 854, 859–60 (Tex. Crim. App. 1991); *Sanchez v. State,* 595 S.W.3d 331, 337–38 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

We overrule Appellant's second issue.

### Conclusion

Having overruled Appellant's two issues, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.