

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00795-CV

**IN THE MATTER OF J.C.**, a juvenile

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2024JUV00810
Honorable Jacqueline Herr-Valdez, Judge Presiding

Opinion by:  Lori Massey Brissette, Justice

Sitting:  Irene Rios, Justice
Lori Massey Brissette, Justice
Adrian A. Spears II, Justice

Delivered and Filed: November 19, 2025

AFFIRMED

Appellant J.C.[1] challenges the juvenile court's order of adjudication finding he engaged in delinquent conduct and the order of disposition committing him to the Texas Juvenile Justice Department for a ten-year term. He argues (1) the evidence was factually insufficient to adjudicate him of aggravated robbery and aggravated assault with a deadly weapon, (2) the juvenile court violated his double jeopardy rights, and (3) the juvenile court committed jury charge error. Based upon our review of the law and the record, we affirm the trial court's judgment.

---

[1] To protect the identity of appellant, who is a minor, we refer to appellant by his initials. *See* TEX. R. APP. P. 9.8(c); TEX. FAM. CODE § 56.01.

## BACKGROUND

Annelise Ramirez was confronted by a male with a handgun as she sat in her car outside of North Star Mall. When she refused to exit her vehicle, the male—now joined by others—opened her door, whereupon Ramirez offered gas and cash transfers. Eventually, the perpetrators returned to their vehicle and, as they drove off, the male who originally confronted her shot three times in the direction of Ramirez's car, with the third shot hitting her right forearm near the elbow. Ramirez chased them to get their license plate number and then stopped to seek medical assistance. The San Antonio Police Department (SAPD) secured surveillance footage from the parking garage identifying the perpetrator's vehicle, secured J.C.'s fingerprints from that vehicle, and had Ramirez positively identify J.C. as the perpetrator based on a blind photo array.

The State filed a petition seeking a determinate sentence, alleging J.C. engaged in delinquent conduct by committing (1) aggravated robbery in violation of Section 29.02 of the Texas Penal Code, and (2) aggravated assault with a deadly weapon in violation of section 22.02 of the Texas Penal Code. TEX. PEN. CODE §§ 29.02(a)(2); 29.03(a)(2). J.C. pled not true to both counts. After a two-day trial, a jury found J.C. engaged in the alleged delinquent conduct. The juvenile court signed an order of adjudication and committed him to the Texas Juvenile Justice Department for a term of ten years with a possible transfer to the Texas Department of Criminal Justice. J.C. now appeals.

## FACTUAL SUFFICIENCY

First, J.C. argues the State's identity evidence against him was factually insufficient to support the jury's verdict. J.C. specifically contends (1) Ramirez's identification of him as her assailant, including the State's use of a blind photo array, was insufficient to identify him and

(2) neither J.C.'s fingerprints nor his DNA were ever found on the Camaro or inside the Audi, and were only found on the Audi's exterior passenger side of the vehicle.

Evidence is factually insufficient to support the verdict if, after considering and weighing all of the evidence in the record, the verdict is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. *See, e.g.*, *Matter of R.E.J.*, No. 04-17-00088-CV, 2017 WL 6032561, at *4 (Tex. App.—San Antonio Dec. 6, 2017, no pet.) (mem. op.); *Matter of E.K.G.*, 487 S.W.3d 670, 676 (Tex. App.—San Antonio 2016, no pet.) (mem. op.). In our review, we are mindful the jury is the sole judge of credibility and may choose to believe or disbelieve any or all of the witnesses' testimony. *Matter of R.I.C.*, No. 04-19-00834-CV, 2020 WL 806947, at *3 (Tex. App.—San Antonio Feb. 19, 2020, pet. denied) (mem. op.).

Here, after considering and weighing all of the evidence in the record, the evidence is factually sufficient. The evidence at trial focused almost exclusively on identity. The fingerprint evidence was mixed. The State introduced evidence of six separate prints taken from the Camaro driver-side door. Of those, only one of the print cards included usable fingerprints, and those did not match J.C.'s fingerprints despite Ramirez's testimony he opened her driver door.[2] The State also introduced fingerprints evidence matching J.C. from the red Audi, secured shortly after the vehicle was located. Those fingerprints were from the passenger side of the vehicle and the rear driver's side frame exterior. The State's fingerprint examiner testified she also processed J.C.'s fingerprints the same day she testified and again confirmed his fingerprints matched the fingerprints from the Audi. As for DNA, the State secured DNA samples from the Camaro, but none of it was of sufficient quantity or quality to make it suitable for comparison.

---

[2] Nor was J.C. positively identified from surveillance footage.

The focus of trial then shifted to Ramirez's eyewitness testimony. Ramirez testified she saw the Audi park near her vehicle. She testified a male, initially wearing a camouflage facial covering, approached her vehicle. He was an African-American male wearing an Under Armor shirt, black or charcoal gray pants, and "an inch-and-a-half of a fro." The video evidence is, at best, unclear as to this description because it was from a distance, but it shows a tall individual emerge from the passenger side of the vehicle with lighter-colored pants and a hoodie (but it's not clear if there is a shirt underneath). Nevertheless, Ramirez testified she got a "good" look at J.C.'s face after he removed his camouflage facial covering, and she witnessed him shoot her in the arm from the passenger side of the vehicle. She also positively identified him in the courtroom as her assailant.

Ramirez also identified J.C. from a blind photo array. State's Exhibit 71 confirms the positive identification, providing Ramirez identified J.C. based on his bushy eyebrows, "skin tone, shadowing of face, [and his] ear perked out more than the other one." Ramirez testified she did a photo array two or three times.

SAPD lead detective Julissa Perez testified she was able to trace the incident to J.C. by reviewing security camera footage to identify and locate the Audi and secure J.C.'s fingerprints from the vehicle. She used that evidence to have youth services create a blind photo array that included J.C. and had a different detective with no knowledge of the case—Detective Claudia Torres—review the photo array with Ramirez. Both Detectives Perez and Torres testified Ramirez identified J.C. as the perpetrator in one of the two blind photo arrays, and Detective Torres further testified Ramirez stated "no" to all of the individuals in the other photo array. Detective Torres testified Ramirez began crying upon seeing J.C.'s photo. She also testified there was no video

footage of the photo array, but she did not normally wear her body cam at the police department where the photo array was conducted and no other camera recorded it.

To summarize, the State did not have J.C.'s DNA or fingerprints to the Camaro or surveillance video of him. But Detective Perez used the surveillance footage to locate the Audi, lift fingerprints from it, and positively identify J.C.'s fingerprints. She then used a mugshot of J.C. to conduct a blind photo array during which Ramirez positively identified him. Ramirez was certain she saw J.C.'s face, and she again positively identified him in court. Despite some evidence in the record that calls into question the identity testimony, and being mindful of our standard of review, we cannot conclude the verdict is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. J.C.'s first two points of error are overruled.

### DOUBLE JEOPARDY

Second, J.C. contends the trial court's disposition order punished him twice for the same offense, violating his rights under the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. The Double Jeopardy Clause protects against: (1) a second or successive petition alleging delinquent conduct for the same delinquent conduct on which there was a previous finding of delinquency or no delinquency; and (2) multiple commitments for a determinate term for delinquency to the Texas Juvenile Justice Department. *See Sledge v. State*, 666 S.W.3d 592, 599 (Tex. Crim. App. 2023).

A juvenile's double jeopardy challenge may be raised for the first time on appeal if it is "clearly apparent" from the face of the record and enforcement of the usual rules of procedural default serves no legitimate state interest. *Sledge v. State*, 666 S.W.3d 592, 599 (Tex. Crim. App.

2023); *see, e.g.*, *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).[3] Double jeopardy is a legal issue which we review de novo if its resolution requires an application of the law to the facts and does not involve credibility and demeanor determinations. *Sledge v. State*, 666 S.W.3d 592, 599 (Tex. Crim. App. 2023).

J.C. specifically challenges that, by the trial court's order, he was the subject of multiple commitments for the same offense. *See Sledge*, 666 S.W.3d at 599; *Ex parte Estevez*, 713 S.W.3d 913, 918 (Tex. Crim. App. 2025) (providing double jeopardy protection prevents both successive punishment and successive prosecution for same offense). A multiple-commitments violation may arise either (1) in the context of lesser-included offenses, where the same conduct is punished under a greater and a lesser-included offense, or (2) when the same conduct is punished under two distinct statutes where the Legislature only intended for the conduct to be punished once. *See Garfias*, 424 S.W.3d at 58.

J.C. makes both arguments here. But, as to the first, the Court of Criminal Appeals has rejected the contention that aggravated assault causing bodily injury is always a lesser-included offense of aggravated robbery by threat in *Garfias v. State*. *See* 424 S.W.3d at 62; *see also Floyd v. State*, 714 S.W.3d 9, 14 (Tex. Crim. App. 2024); *cf.* TEX. PEN. CODE § 22.02(a)(1) (agg. assault causing bodily injury); TEX. PEN. CODE § 29.03(a)(3) (agg. robbery by threats). As to his second argument, J.C—just as in *Garfias*—was charged with aggravated robbery by threat and aggravated assault causing bodily injury based on the different conduct that occurred during the full interaction. *See Garfias*, 424 S.W.3d at 60-61 (concluding offenses of aggravated robbery by threat and aggravated assault causing bodily injury, as charged in Garfias's indictment, each contained

---

[3] *See also In re J.R.R.*, 696 S.W.2d 382, 384 (Tex. 1985); *State v. C.J.F.*, 183 S.W.3d 841, 848 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Matter of S.G., Jr.*, 935 S.W.2d 919, 923 (Tex. App.—San Antonio 1996, writ dism'd w.o.j.).

element other did not and recognizing gravamen of offenses of aggravated robbery by threat and aggravated assault bodily injury are different, one focusing on threat and one focusing on actual harm inflicted on victim); *see also Floyd*, 714 S.W.3d at 14.

J.C. relies on the language within the concurrence in *Garfias* to contend he was subjected to double jeopardy because the State treated the events as one criminal transaction. But, even taking into account the concern set forth in that concurrence, Justice Cochran—the concurring author—still joined the majority in finding no double jeopardy violation apparent on the face of the record. *See Garfias*, 424 S.W.3d at 64 (Cochran, J., concurring). And, in any event, we are bound by the majority opinion in *Garfias*, not the concurrence. But, most importantly, our review of the pleadings fails to support J.C.'s assertion that the State treated the various acts of J.C. as a single criminal transaction. *See Nawaz*, 663 S.W.3d at 744 (requiring review of pleadings and relevant statutory provisions, not evidence presented at trial, to determine nature of State's case); *see, e.g.*, *Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018); *Garfias*, 424 S.W.3d at 58–59. And J.C. identifies no controlling authority to the contrary. *See* TEX. R. APP. P. 38.1(i).

Thus, we conclude that double-jeopardy principles were not violated in this case.

## JURY CHARGE ERROR

In reviewing a claim of jury charge error, we first determine whether there was error. *Lozano v. State*, 636 S.W.3d 25, 29 (Tex. Crim. App. 2021); *In re C.C.*, No. 06-22-00057-CV, 2023 WL 1872368, at *2 (Tex. App.—Texarkana Feb. 10, 2023, pet. denied). The parties agree the trial court committed jury charge error when it failed to limit the appropriate culpable mental state definitions to their respective conduct elements. *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *Servin v. State*, 582 S.W.3d 629, 632 (Tex. App.—San Antonio 2019, no pet.). This is supported by the record.

But, because appellant failed to lodge a timely objection to the jury charge in the trial court, we will reverse only if the error is so egregious that the defendant did not have a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *see, e.g.*, *Lozano*, 636 S.W.3d at 29. Such egregious harm must involve actual harm, not just theoretical harm, and must affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Servin*, 582 S.W.3d at 631; *see, e.g.*, *Lozano*, 636 S.W.3d at 29. In considering whether harm is egregious, we review the entire record, including the jury charge, the evidence, the contested issues, the arguments of counsel, and anything else in the record that might inform our analysis. *Lozano*, 636 S.W.3d at 29.

Courts have repeatedly found that a jury charge that tracks the statutory language is generally not egregiously harmful. *See, e.g.*, *Poor v. State*, 715 S.W.3d 15, 34 (Tex. App.—Eastland 2024, pet. ref'd); *Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd); *see also Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Servin*, 582 S.W.3d at 633 (rejecting as egregiously harmful aggravated robbery jury charge which properly tracked statute because facts, as applied to law, in application paragraphs, pointed jury to appropriate portion of definitions). Thus, because the language used here tracks the statutory language in the Penal Code, this factor does not favor finding egregious harm. *See* TEX. PEN. CODE §§ 6.03(a)-(b), 29.02(a)(2); 29.03(a)(2).

Further, courts have held that egregious harm is not present where the subject of the error was not the focus at trial, either of the State or the defendant in presenting the evidence or argument to the jury. *See e.g., Servin*, 582 S.W.3d at 633 (holding charge error relating to mental state did not result in egregious harm where the defendant's mental state was not the focus at trial); *see also Herrera v. State*, 527 S.W.3d 675, 680 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (same).

Here, a review of the record demonstrates that the focus at trial was whether J.C. was the perpetrator, not the mental state or conduct elements, with both the State and defense counsel presenting evidence and argument attempting to bolster or discredit identification testimony.

We therefore cannot conclude J.C. suffered egregious harm.[4]

## CONCLUSION

For these reasons, we affirm the trial court's order of adjudication and order of disposition.

Lori Massey Brissette, Justice

DO NOT PUBLISH

---

[4] J.C. also contends the trial court erred in sustaining the State's challenge for cause of venirepersons 19 and 20. But J.C. did not object—stating nothing on the record for the State's challenge to venireperson 20 and stating "okay" on venireperson 19—and his complaints are therefore not preserved for our review. *See, e.g.*, TEX. R. APP. P. 33.1; *Ortiz v. State*, 93 S.W.3d 79, 88 (Tex. Crim. App. 2002); *see also In re A.V.*, No. 11–16–00078–CV, 2017 WL 2484348, at *2 (Tex. App.—Eastland June 8, 2017, no pet.) (mem. op.); *In re J.O.*, 38 S.W.3d 718, 720 (Tex. App.—San Antonio 2000, no pet.).